**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**ORIGINAL**
**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JAN 1 1 2010 ★

BROOKLYN OFFICE

|  |  |
|---|---|
| JOSEPH H. AND MIRIAM F. WEISS FOUNDATION, INC., Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| NOVARTIS AG and NESTLÉ S.A., | ) ) |
| Defendants. | ) ) ) |

Case No._____

# CV 1 0 - 0 1 0 0

__Jury Trial Demand__

BLOCK, J.

REYES, M.J

## CLASS ACTION COMPLAINT

Plaintiff, the Joseph H. and Miriam F. Weiss Foundation, Inc. ("Plaintiff"), by its attorneys, for its Class Action Complaint, alleges as follows:

## NATURE OF THE ACTION

1.       This is a class action on behalf of the public shareholders of Alcon, Inc. ("Alcon" or the "Company"), against Defendants Novartis A.G. ("Novartis") and Nestlé S.A. ("Nestlé"), alleging violations of Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78m(d), 78n(d) and 78n(e), and Rules 13d-1, 14d-1 and 14d-10 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), and breaches of fiduciary duty. Plaintiff and the Class seek immediate injunctive relief against Defendants in connection with an unlawful and coercive squeeze-out transaction by which Novartis seeks to acquire the minority 23% interest in Alcon stock in public shareholders' hands for approximately $153 in stock per share pursuant to a fixed exchange ratio of 2.8 Novartis shares for each Alcon share (the "Squeeze-Out Transaction").

2.      Novartis and Nestlé have breached their fiduciary duties to Plaintiff and the Class and violated Sections 13(d) and 14(d) of the Exchange Act because Novartis' $153 per share offer for the 23% of publicly owned shares is materially less than the $180 per share price which Novartis is paying for the 52% of the Company's shares being purchased from Nestlé (the "Nestlé Transaction"). Unless Novartis extends the same offer to Alcon's minority shareholders on terms equal to those being offered to Nestlé, as required under Rule 14d-10 and under principles of fiduciary duty, Novartis should be prohibited from taking any further steps to effectuate the Nestlé Transaction and Squeeze-Out Transaction.

3.      Novartis has ignored its obligations to file the required tender offer statement concerning the Squeeze-Out Transaction and other information concerning the Squeeze-Out Transaction under the federal securities laws. Such conduct violates Rule 14d-10 of the Exchange Act, which provides that no bidder can make a tender offer unless "[t]he tender offer is open to all security holders of the class of securities subject to the tender offer." Even in multi-national offers, Rule 14d-1 makes it plain that the offer to U.S. holders must be made "on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers."

4.      In fact, the Swiss Takeover Board has ruled that under Swiss law, "[a] public takeover bid – including that of the Bidder [here, Novartis] must apply to all the Target Company's listed stakeholdings . . . ." The Swiss Takeover Board continued, "[a] bidder is therefore obliged, despite using possible so-called Sales Restrictions or Offer Restrictions, to accept shares which are offered by people who are not allowed to be told of the offer according to U.S. law unless it complies with the corresponding U.S. regulations."

5.      Novartis has failed to make the requisite disclosures pursuant to Section 13(d) of the Exchange Act and Rule 13d-1 promulgated thereunder (which obligates owners of greater

than 5% blocks of shares to disclose to shareholders the nature and purpose of their ownership interests).  Novartis previously acquired a 25% interest in Alcon from Nestlé and has announced that it has exercised its call option to purchase from Nestlé its remaining 52% interest in Alcon. The transaction is expected to close in the first half of 2010, and Novartis has stated that it will then seek to acquire all of the remaining minority-held shares for materially less consideration than it is paying to Nestlé.

6.      Absent injunctive relief, Nestlé will receive an unlawful premium for its Alcon shares and Novartis will take total control of the Company in breach of Novartis' and Nestlé's fiduciary duties to Plaintiff and the Class and without adequate disclosure under Sections 13(d) and 14(d) of the Exchange Act.  The declaratory and injunctive relief sought herein is necessary to provide Plaintiff and the Class an opportunity to evaluate whether Alcon's shareholders should tender into the offer and to provide them with all the material information about the Nestlé Transaction and Squeeze-Out Transaction to which they are entitled under the securities laws.  Absent such relief, there is a substantial likelihood that Plaintiff and the Class will be irreparably harmed.  Plaintiff and the Class will be forced to take action (such as selling their shares prior to completion of the transactions) that they would not otherwise take without the benefit of accurate information.

7.      The relief requested in this Action is especially necessary because the Company has announced that it believes that Novartis is attempting to circumvent important protections that Alcon established for the benefit of its minority shareholders against a coercive takeover bid. Alcon has also stated that it is disappointed that Novartis is attempting to circumvent those protections and corporate best practices and the minority protection principles by claiming that Alcon's minority shareholders are neither accorded minority protections under the Swiss Takeover Code nor the rules under the New York Stock Exchange.

8.      Accordingly, Plaintiff and the Class seek to enjoin the Nestlé Transaction and the Squeeze-Out Transaction action, or, alternatively, rescission of the transactions in the event Defendants are able to consummate them, or payment to Plaintiff and the Class of the same per share consideration being paid to Nestlé, and also seek to compel Defendants to properly disseminate accurate and complete disclosures that fully and fairly inform shareholders of all material information in a non-misleading manner.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 13(a), 14(d) and 14(e) of the Exchange Act, 15 U.S.C. §§ 78m(d), 78n(d) and 78n(e), and SEC rules and regulations promulgated thereunder, as well as fiduciary duty obligations.

10.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.  Plaintiff is, and was at all relevant times, the owner of Alcon shares.

11.     This Court has subject matter jurisdiction over the claims made under the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1331.  This Court has jurisdiction over the action.  This Court has personal jurisdiction over Novartis and Nestlé under the New York long-arm statute, N.Y.C.P.L.R. § 301 et seq.

12.     Venue is proper in this Judicial District pursuant to the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. 1391.  One or more of the acts and transactions complained of herein have occurred or are occurring and, unless enjoined, will continue to occur in this Judicial District. Among other things, Novartis and Nestlé have engaged in continuous and systematic contacts with the State of New York and purposefully availed themselves of this forum by doing business, directly or through its subsidiaries, including among other things, listing Novartis' American

4

Depository Shares on the New York Stock Exchange ("NYSE") and deriving revenue from such activity.

## PARTIES

13.     Plaintiff is and has at all times relevant hereto been a shareholder of Alcon. Plaintiff's principal place of operations is located in this Judicial District.

14.     Defendant Novartis is an entity organized and existing under the laws of Switzerland with its principal place of business at Lichtstrasse 35, CH-4056 Basel, Switzerland. At least one Novartis subsidiary, Novartis Corporation, maintains offices in New York. Novartis' American Depository Shares ("ADS") are registered and actively traded on the New York Stock Exchange under the symbol NVS.

15.     Defendant Nestlé is a multi-national packaged foods company founded and headquartered in Vevey, Switzerland and listed on the SWX Swiss Exchange and traded in the United States. Nestlé acquired Alcon in 1977 for $280 million and has since gradually divested its ownership interest in Alcon, including through an initial public offering in 2002. Nestlé is currently the majority holder of Alcon shares, subject to the completion of the Nestlé Transaction, with a current ownership interest of 52% of Alcon's outstanding shares.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action on its own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the public shareholders of Alcon (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

17.     This action is properly maintainable as a class action.

18.     The Class is so numerous that joinder of all members is impracticable.  Alcon's publicly-held stock is held by scores, if not hundreds or thousands, of individuals and entities scattered throughout the country.

19.     There are questions of law and fact that are common to the Class and predominate over questions affecting any individual members of the Class.  These questions include, *inter alia*, the following:

        a.      Whether  the  disclosure  materials  contain  materially  false  and/or misleading statements and omissions in violation of Sections 13(d) and 14(d) of the Exchange Act;

        b.      Whether the Defendants have breached their fiduciary duties to Plaintiff and the Class; and

        c.      Whether Plaintiff and the other members of the Class would be irreparably injured in the absence of injunctive relief requiring Defendants to issue additional disclosures to shareholders to render certain of the disclosure statements complete and otherwise non-misleading.

20.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

21.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive

of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

22.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, and final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

23.     Alcon, which is the target of the coercive Squeeze-Out Transaction, is organized under the laws of Switzerland and maintains its principal executive offices at 6201 South Freeway, Fort Worth, Texas 76134.  Alcon's stock is listed and trades on the New York Stock Exchange under the symbol ACL. Alcon describes itself as the world's leading eye care company, with sales of approximately $6.3 billion in 2008, operating in 75 countries and 180 markets worldwide.

24.     In April 2008, Novartis and Nestlé entered into an agreement pursuant to which Novartis immediately acquired a 25% ownership interest in Alcon from Nestlé for approximately $10.4 billion or $143 per share (the "First Step Acquisition"), and Novartis also acquired a call option to purchase Nestlé's additional 52% stake in Alcon for approximately $180 per share or $28.1 billion.

25.     On January 4, 2010, Novartis filed Form 425 with the SEC, containing a press release issued on that date, stating: "Novartis intends to gain full ownership of Alcon Inc. (NYSE: ACL) by first completing the April 2008 agreement with Nestlé S.A. to acquire a 77% stake in a global leader in eye care and subsequently entering into an all-share direct merger with Alcon for the remaining 23% minority stake."

26.     Nestlé will receive $28.1 billion, or a weighted average price of $180 per share in cash.  Novartis said it expects the deal to close in the second half of 2010. The blended cost for

Novartis' 77% majority stake is $38.5 billion, or $168 per share.  Upon completion of the Nestlé

Transaction, Alcon will be a majority-owned unit of Novartis.

27.     Novartis also announced, on January 4, 2010, that it offered to acquire the

remaining 23 percent of the Company from public minority shareholders for $11.2 billion, or

$153 per Alcon share pursuant to an all-share direct merger under the Swiss Merger Act.  The

Squeeze-Out Transaction requires two-thirds approval by Novartis and Alcon shareholders.  If,

as Novartis claims, it has the right under Swiss law to vote its Alcon stake in favor of the merger,

it has the votes to approve the Squeeze-Out without any votes from the public shareholders.  If

the Squeeze-Out Transaction is completed, Alcon shares would be eligible for delisting from the

New York Stock Exchange and become eligible for termination of registration pursuant to

Section 12 of the Securities Exchange Act of 1934, as amended.

28.     Novartis' January 4, 2010 press release stated, among other things, that the

proposed merger will provide needed clarity on Alcon's future:

> The addition of Alcon will strategically strengthen our healthcare
> portfolio and our position in eye care, a sector with dynamic
> growth due to the increasing patient needs of an aging population"
> said Dr. Daniel Vasella, Chairman and CEO of Novartis.  "This is
> the right time to simplify Alcon's ownership to eliminate
> uncertainties for employees and shareholders.  It will also allow us
> to strengthen innovation power by combining R&D efforts and
> grow our global market presence thanks to our complementary
> product portfolios."
>
>                                   * * *
>
> Alcon . . . has developed leading positions in its three business
> sectors through a consistent focus on eye care since its creation in
> 1945:
>
> Surgical (2008 sales: USD 2.9 billion)
> Alcon is the global leader in cataract and vitreoretinal surgery,
> offering a portfolio of medical devices and ophthalmic surgery
> products.  In 2008, more than 60% of micro-incision cataract
> surgeries . . . were performed with Alcon equipment.  Alcon is also
> the global leader in IOLs based on the AcrySof® family, which
> exceeded USD 1 billion of sales in 2008.

Pharmaceuticals (2008 sales: USC 2.6 billion)
Alcon has a portfolio of specialty medicines for various eye
diseases, including glaucoma and conditions in the front of the eye
such as infections and allergies. Strong growth has come from
new product introductions and global expansion, particularly in
Japan, where three new medicines have been launched since 2006.

29.     The proposed transactions do not provide fair value for the minority shareholders

of Alcon stock, especially given the inherent value of the Company and in light of its growing

revenue, asset base and/or market share and the future prospects of the Company.

30.     On January 4, 2010, Alcon filed a Form 6-K with the SEC which included a press

release issued on that date, stating, among other things:

> The Alcon Board of Directors established an Independent Director
> Committee of the Alcon Board of Directors in 2008 in connection
> with Novartis' initial purchase of approximately 25 percent of the
> Alcon shares from Nestle in order to protect the interests of the
> minority holders of publicly-held Alcon shares in transactions such
> as Novartis' merger proposal.  The Committee is composed of
> three independent directors: Lodewijk de Vink, Joan W. Miller,
> M.D., and Thomas G. Plaskett.  In connection with its review of
> the Novartis merger proposal the Committee has retained Greenhill
> & Co as independent financial advisor and Sullivan & Cromwell
> LLP as independent legal advisor and will thoroughly review the
> Novartis merger proposal in an effort to secure the best attainable
> value for the minority holders of publicly-held Alcon shares.  The
> Committee notes that neither the Committee nor the management
> of Alcon participated in the preparation of Novartis' merger
> proposal.
>
> The Committee is working closely with its advisors to evaluate the
> terms of the proposed merger, including the form and amount of
> consideration.  In particular, the Committee notes that Novartis'
> implied per share valuation of Alcon of approximately US$153
> represents an approximately 15 percent discount to the weighted
> average call priced of US$180 to be paid by Novartis to Nestle for
> Nestle's approximately 52 percent interest in Alcon.    The
> Committee continues to have confidence in Alcon management's
> ability to deliver superior value to its shareholders.

The Committee will inform the Alcon shareholders of the Committee's formal position on Novartis' merger proposal once the Committee completes its evaluation.

31.     On January 5, 2010, Alcon issued a press release entitled "Alcon Independent Director Committee Responds to Novartis" stating, among other things:

> The Alcon, Inc. (NYSE: ACL) Independent Director Committee, in response to comments made today by Novartis AG (NYSE: NVS), stated its belief that Alcon has established certain important protections for the benefit of Alcon's minority shareholders against a coercive takeover bid and is disappointed that Novartis is attempting to circumvent those protections and corporate governance best practices.
>                                          * * *
> Novartis appears to be attempting to circumvent the minority protection principles embodied in the actions noted above by claiming that the Alcon minority shareholders are neither accorded minority protections under the Swiss Takeover Code nor the rules under the NYSE.
>
> Under any circumstance, Swiss corporate law requires any merger proposal to be approved by a majority of the Alcon Board of Directors with "interested" directors abstaining. Assuming that the Novartis and Nestle board representatives along with the Alcon executive board abstain, approval by the independent directors comprising the Independent Director Committee would be required to approve a merger with Novartis.
>
> On its investor conference call this morning, Novartis expressed its view that, if it were unable to obtain the required approval of the Alcon Board of Directors and the Independent Director Committee, Novartis would simply wait until it owned 77 percent of Alcon to then unilaterally imposed the terms of the proposed merger on the minority shareholders. Such a unilateral action would clearly be inconsistent with the minority protection principles upon which Alcon established itself and Alcon shareholders rely.

32.     Novartis is seeking to acquire the Company at the best time for Novartis, and the worst time for Alcon's public minority shareholders. The Company's current stock price is depressed due, primarily, to the recent turmoil in the markets. It does not reflect the intrinsic

value of the Company. In fact, Novartis is offering 15 percent less for the minority shares in the Squeeze-Out Transaction than it is paying for Nestlé's 52% interest in Alcon. Indeed, Alcon's shares traded as high as $166 per share as recently as December 30, 2009, representing a substantial premium to Novartis' current proposal of $153 per share.

33.     Moreover, at the expense of Alcon's minority shareholders, the combination of the Nestlé Transaction and the Squeeze-Out Transaction substantially favors Nestlé, is calculated to unfairly dissuade potential third-party suitors from making competing offers for Alcon, and is an unlawful coercive set of transactions.

**Self-Dealing and Conflict of Interests**

34.     By reason of its majority and controlling ownership of Alcon, Novartis is in possession of non-public information concerning the financial condition and prospects of Alcon, and especially the true value and expected increased future value of Alcon and its assets, which has not been disclosed to Alcon' s public shareholders. Moreover, despite their duty to protect the Company franchise for all of its shareholders, Novartis and Nestlé have clear and material conflicts with the interests of outside shareholders and are acting to better their own interests at the expense of Alcon's public shareholders.

35.     Based on the aforementioned, the proposed Squeeze-Out Transaction is wrongful, unfair and harmful to Alcon's minority public shareholders, and represents an effort by Defendants to aggrandize their own financial positions and interests at the expense of and to the detriment of Class members. The proposed transactions deny Plaintiff and the other members of the Class their rights, while usurping the same for the benefit of the Defendants on unfair terms.

36.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company's minority shareholders will continue to suffer absent judicial intervention.

**Defendants' Fiduciary Duties**

37.    As controlling shareholders of Alcon, Novartis and Nestlé have fiduciary duties to Plaintiff and the Class.

38.    As majority owners of Alcon, Novartis and Nestlé have fiduciary obligations to treat all Alcon shareholders similarly and not favor one over the others, and to provide the minority shareholders the same per share consideration that is being paid to Nestlé.

## COUNT I

### Violations of Section 13(d) of the Exchange Act
### (Against All Defendants)

39.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

40.    Section 13 of the Exchange Act and Rule 13d-1 promulgated thereunder requires a group that has acquired, directly or indirectly, beneficial ownership of more than 5% of a class of a registered equity security, to file a statement with the SEC, disclosing, *inter alia,* the identity of its members and the purpose of its acquisition. This statement must also be transmitted to the issuer of the security and to each exchange on which the security is traded. Under Section 13(d), a group is defined as an aggregation of persons or entities who "act ... for the purpose of acquiring, holding or disposing of securities..." such that the members are combined in furtherance of a common objective. 15 U.S.C. § 78m(d)(3).

41.    Novartis and Nestlé have acted as a group because they have combined to acquire, hold or dispose of securities of Alcon. That group was formed at least as early as 2008 when Novartis began purchasing shares of Alcon from Nestlé. The Defendants have a common plan or purpose, to wit, a transfer of control of Alcon to Novartis, and have coordinated their activities to accomplish that goal. However, neither Novartis nor Nestlé, who have clearly communicated

about the future of Alcon, have filed a Schedule 13D disclosing in full the circumstances surrounding (i) when Novartis and Nestlé first communicated concerning Alcon, and the substance of such communications, (ii) the relationship between Novartis and Nestlé, and (iii) the formation of the Novartis - Nestlé group.

42.     A Schedule 13D filing by Novartis would require disclosure of, among other things: (1) information as to any contracts, arrangements, or understandings with any person with respect to any securities of Alcon; (2) the "purpose of the purchases", including whether Novartis has any "plans or proposals" concerning "[a]n extraordinary corporate transaction" or "change in the present board of directors or management;" and (3) the financing arrangements Novartis made for the purchases, including a "description of the transaction."   15 U.S.C. § 78m(d)(1); 17 C.F.R. §§ 240.13d-1, 240.13d-101.

43.     Novartis' share ownership plainly exceeded the five percent ownership threshold set forth in Rule 13d-1(a), obligating Novartis to file a Schedule 13D with the SEC within 10 days after such time as Novartis exceeded this ownership threshold.   Novartis has deprived Plaintiff and the Class of the material information that they are entitled to receive. Plaintiff and the Class have been, are being, and unless relief is granted by this Court, will continue to be, irreparably injured in that they are without the material information to which they are lawfully entitled.

44.     Novartis and Nestlé are obligated to correct the foregoing material omissions so that Plaintiff and the Class have a full and accurate understanding of Novartis' and Nestlé's actions and intentions as soon as possible.   Absent such a correction and appropriate interim relief, Plaintiff and the Class will be irreparably harmed.

45.     Plaintiff has no adequate remedy at law.

## COUNT II

### Violation of Sections 14(d) of the Exchange Act (Against Novartis)

46.     Plaintiff repeats and realleges each of the above as if fully set forth herein.

47.     Section 14(d)(1) of the Exchange Act makes it unlawful for any person or company "directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise" to make a tender offer or exchange unless such person or company has filed with the SEC "a statement containing such of the information specified in section 13(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(d)(1). Pursuant to Section 14(d), Rule 14d-6(d) requires a "bidder" to file a Schedule to disclose this material information.  "Bidder" is defined in Rule 14d-1(g)(2) as "any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. §§ 240.14d-6, 240.14d-1.

48.     SEC rules and regulations promulgated pursuant to Section 14(d) describe in detail the materials that must be included in a tender offer solicitation, registration statement or prospectus, including a Schedule TO and Form F-4. SEC rules and regulations expressly require that bidders make complete and accurate disclosure of, among other things:

> (a)     "The reasons for engaging in the transaction," 17 C.F.R. § 229.1004(a)(2)(III); Form F-4, Item 4(a)(2), and "the purposes of the transaction," 17 C.F.R. § 229.1006(a);
>
> (b)     Pro forma financial information reflecting the impact of the transaction on the company, 17 C.F.R. § 229.1010(b), as well as any adjustments attributable to the transaction, 17 C.F.R. § 210.11-02(b)(6) and Item 5 of Form F-4;
>
> (c)     Pro forma financial information required by Regulation S-X, 17 C.F.R.

§ 210.11-02(b)(6) and Item 5 of Form F-4;

(d)     A description of the accounting treatment of the transaction, Item 4(a)(5) of Form F-4;

(e)     A description of any material litigation, Item 8.A.7 of Form 20-F; and

(f)     A discussion of the most significant risk factors that make the transaction speculative or risky, Item 3 of Form F-4 and 17 C.F.R. § 229.503(c).

49.     In addition to these specific requirements, a bidder must "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading." 17 C.F.R. § 229.1011(b).

50.     Disclosure of the identity and background of each "bidder" is intended to give tendering shareholders information regarding the offeror's management to provide the shareholders with a basis for determining whether to hold, sell or tender all or part of their shares in response to the offer.

51.     Novartis has stated that it is excluding minority shareholders from the Nestlé Transaction.  Novartis has failed to file a Schedule TO and has failed to make the substantive disclosures that are required under Section 14(d) and the SEC rules promulgated thereunder. However, given (a) the size of Novartis' U.S. shareholder base, (b) the fact that both Novartis and Alcon have securities listed on the New York Stock Exchange, (c) that Novartis has candidly admitted that it will pay minority shareholders less than it will pay Nestlé, and (d) that the proposed Squeeze-Out Transaction has generated media and analyst publicity in the United States, Novartis has triggered the requirements under Section 14(d)(1) and the rules promulgated thereunder to file tender offer materials under the federal securities laws.

15

52.     Novartis' efforts to evade United States securities laws while at the same time recognizing that minority shareholders would be automatically cashed-out, confirm Novartis' improper efforts to secure the participation of U.S. persons while avoiding protections afforded to U.S. investors by the Exchange Act.

53.     Plaintiff has no adequate remedy at law.

### COUNT III

### Violation of Section 14(e) of the Exchange Act (Against Novartis)

54.     Plaintiff repeats and realleges each of the above as if fully set forth herein.

55.     Section 14(e) of the Exchange Act proscribes untrue statements of material fact or omissions of material fact made in connection with tender offers. It is unlawful for any person or company to "make any untrue statement of material fact or omit to state any material fact necessary in order to make the statements ... not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices" in connection with a tender offer.

56.     Novartis' failure to disclose all of the material information that is required by a Schedule TO and the rules promulgated under Section 14(d) of the Exchange Act constitutes an omission of material fact necessary to make the statements in the required Schedule 13D and Offer Prospectus not misleading. In omitting materials required to be filed under a Schedule TO while commencing an Offer for a company, over 20% of whose shares are held by minority shareholders, Novartis is engaging in fraudulent, deceptive, or manipulative acts in connection with a tender offer.

57.     Novartis' scheme to exclude Alcon's minority shareholders from the Offer in order to avoid the disclosure, filing and registration obligations under the Exchange Act and the Securities Act violates Rule 14d-10, which requires that all security holders be subject to "equal

treatment." Novartis' scheme to avoid application of Rule 14d-10 is itself a fraudulent, deceptive and manipulative act or practice.

58.     Novartis has also violated Section 14(e) of the Exchange Act because, as set forth above, it has failed to disclose the true circumstances surrounding its and Nestlé's acquisition of Alcon shares and its relationship with Nestlé in connection therewith.  Novartis has made no disclosure of when Novartis and Nestlé first communicated concerning Alcon, nor the substance of communications between Novartis and Nestlé.

59.     Novartis' statements of fact and/or omissions of material fact were made knowingly and deliberately in order to deceive Plaintiff and the Class about the transactions and the true circumstances surrounding the plan to acquire control of Alcon without making the required disclosures under the federal securities laws.

**COUNT IV**

**<u>Breach of Fiduciary Duty (Against All Defendants)</u>**

60.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

61.     Novartis and Nestlé have breached their fiduciary duties to Plaintiff and the Class.

62.     As alleged herein, Defendants have initiated a process pursuant to which Nestlé will receive $180 per share for its Alcon shares and Alcon's minority shareholders will receive only $153 per share, vesting Nestlé with a substantial premium and giving Novartis full control and ownership of Alcon at a price that is unfair to the Company's minority shareholders.

63.     As such, unless Defendants' conduct is enjoined by the Court, Defendants will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value.

64.     Plaintiff and the Class have no adequate remedy at law.

## DECLARATORY AND INJUNCTIVE RELIEF

65.     Plaintiff repeats and alleges each of the above Paragraphs as if fully set forth herein.

66.     The Court may grant the declaratory and injunctive relief sought herein pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and 65. A substantial controversy exists because Defendants are committing flagrant violations of the federal securities laws and their fiduciary duties during an attempt to take total control of the Company.

67.     Unless relief is issued, as a result of their violations of federal securities laws and breaches of fiduciary duties, Defendants may succeed in taking control of the Company without shareholders having the opportunity to evaluate the options before them in a fair and even-handed manner.

68.     Injunctive and declaratory relief is required, *inter alia,* (a) declaring violations of Sections 13(d), 14(d) and 14(e) of the federal securities laws and breaches of fiduciary duties, and (b) prohibiting all further action in connection with the Offer, including taking down any registered shares tendered in the Offer, until (i) Novartis complies in full with Rule 14d-10 and extends equal terms to all Alcon shareholders, (ii) Novartis files a registration statement and prospectus under the Securities Act, and a Schedule TO that complies in full with the requirements of Section 14(d) of the Exchange Act, and (iii) all corrective disclosures are made by Novartis, including the filing of a Schedule 13D, truthfully and accurately disclosing the arrangements between Novartis and Nestlé regarding their transactions in Alcon securities.

69.     Plaintiff and the Class face the prospect of immediate, severe and irreparable injury should Novartis and Nestlé be permitted to proceed with its Nestlé Transaction and the Squeeze-Out Transaction. Alcon's minority shareholders have been unlawfully excluded from an offer on equal terms to the Nestlé Transaction. Material information has been omitted and

minority security holders have been denied the opportunity to evaluate all of the material information that Section 14(d), 13(d) of the Exchange Act entitle them to receive. If the requested relief is not granted prior to the completion of the Nestlé Transaction (currently expected to be in the first half of 2010), Defendants may succeed in effectuating the scheme complained of herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendants and in favor of Plaintiff:

A.      Declaring that this action is properly maintainable as a class action, certifying Plaintiff as a Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants from closing the Nestlé Transaction and taking any further action in furtherance of Novartis' attempt to acquire control and ownership of more than the number of Alcon shares which it currently owns, until (i) Novartis and Nestlé comply with their fiduciary obligations to Plaintiff and the Class; (ii) Novartis complies in full with Rule 14d-10 and extends the same offer to Alcon's minority shareholders that it is paying to Nestlé for its shares on equal terms to all Alcon shareholders; (iii) a registration statement and prospectus is filed under the Securities Act; (iv) a Schedule TO is filed that complies with Section 14(d) of the Exchange Act; and (v) a Schedule 13D is filed with the SEC by Novartis making prompt and accurate disclosures, and that such injunction be maintained for an additional period of at least 20 days following such corrective disclosure and filing;

C.      Enjoining Defendants and their agents and employees, preliminarily and permanently, from further violations of Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 and the rules promulgated thereunder;

D.      Requiring Defendants to comply with Section 13(d) of the Exchange Act and the rules thereunder by filing an accurate statement of Schedule 13D;

E.      Enjoining Defendants and their agents and employees, preliminarily and permanently, from further breaches of their fiduciary duties to Plaintiff and the Class;

F.      Awarding Plaintiff the costs and disbursements of this action, together with reasonable attorneys' and experts' fees; and

G.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

### Jury Trial Demand

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: January 8, 2010

Respectfully submitted,

By: _____

**STULL, STULL & BRODY**
Jules Brody (JB-9151)
Jason D'Agnenica (JD-9340)
6 East 45th Street
New York, NY  10017
Tel.:  (212) 687-7230
Fax:  (212) 490-2022

***Attorneys for Plaintiff***

## PLAINTIFF CERTIFICATION

JOSEPH H. AND MIRIAM F. WEISS FOUNDATION, INC. ("Plaintiff"), through its

Trustee, hereby states:

1.      Plaintiff has reviewed the complaint against Novartis, A.G. and Nestle, S.A. and has authorized the filing of the complaint on its behalf.

2.      Plaintiff did not purchase any shares of Alcon, Inc. ("Alcon") at the direction of its counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a lead plaintiff and/or representative party on behalf of a class, including providing testimony at deposition and trial if necessary.

4.      Plaintiff acquired 25 shares of Alcon on December 28, 2007 and continues to own those shares.

5.      Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive its pro rata share of any recovery, or as ordered or approved by the court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of January, 2010

_____
Joseph H. Weiss, Trustee for the
Joseph H. and Miriam F. Weiss
Foundation